IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM H. ARMSTRONG, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-1749 |
| | ) |
| UNITED STATES STEEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
# ORDER OF COURT

### SYNOPSIS

A group of retired employees assert breach of contract, fraudulent inducement and misrepresentation claims against their former employer in connection with statements made about an early retirement package. The employees seek a remand of this action to state court, arguing that their claims are not completely preempted under either ERISA or the LMRA. I agree that a remand of this case is required.

### OPINION

The Plaintiffs (hereinafter referred to as the "Employees") were employed by the Defendant United States Steel ("USS") in 2002 and worked at the USS Clairton Works. The Employees were all members of the Collective Bargaining Unit of the

1

United Steelworkers of America ("USWA"), Local 1557.  A 2003 USS-USWA Basic Labor Agreement ("BLA") contemplated a workplace restructuring which called for the reduction in the number of employees at the Clairton Plant.

A "Transition Assistance Program" ("TAP") was developed to facilitate the reduction in the workforce by encouraging the voluntary early retirement of certain pension eligible employees.  According to the Employees, USS then issued a memo dated June 30, 2003 regarding the TAP.  The June 30, 2003 memo, which the Employees characterize as an "offer," informed recipients that they had a "one-time opportunity" to elect to retire under the terms of the TAP.  The Employees further contend that the "offer" explained that <u>all</u> employees would be treated in an identical fashion. Each of the Employees involved in this action received the June 30, 2003 memo and timely completed the application for participation in the TAP - i.e., they "accepted" the offer.  USS then approved and consented to the applications in accordance with the TAP.

According to the Employees, USS then materially breached these individual contracts.  The Employees contend that, contrary to its promise, USS subsequently agreed to provide enhanced benefits and extended retirement dates to a different group of employees ("Group II employees").  The enhanced benefits included, among other things, a pay-out of additional vacation and a use of higher wage earnings for lifetime pension calculations.  The Employees contend that USS's material breach caused them to suffer a loss of enhanced lifetime pension benefits; a loss of continued employment and increased wages, vacations and profit-sharing pay; and

a loss of seniority and continued employment rights.

The Employees also argue that USS knew that the TAP was not a one-time only voluntary retirement plan and knew that the TAP would be changed and enhanced for lower seniority employees, when it falsely represented to them that no changes would be made. The Employees contend that USS made this material false representation with the intent to induce them to sign the TAP agreements and waive their rights to continued employment.

Accordingly, the Employees initiated this action in the Court of Common Pleas of Allegheny County, Pennsylvania, asserting claims for breach of contract, fraudulent inducement and misrepresentation. USS thereafter removed the action to this Court, arguing that the claims were completely preempted by the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1001 et seq., and / or the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185(a). The Employees counter that the doctrine of complete preemption is inapplicable and have filed a Motion to Remand. See Docket No. 6.[1]

For the reasons set forth below, I find that the doctrine of complete preemption is inapplicable here. Consequently, I am without the subject matter jurisdiction necessary to preside over this case. This action is remanded to state court.

---

[1] USS filed a Motion to Dismiss the claims, contending that the claims are preempted by ERISA and the LMRA and that the Employees signed a general release that prevents them from proceeding on any claim against USS. See Docket No. 3. Though the Motion to Dismiss was filed before the Motion to Remand, I must address the Motion to Remand first because it presents jurisdictional issues.

**ANALYSIS**

The central issue before me is whether USS properly removed this action to federal court. "A civil action filed in state court may be removed to federal court if the claim is one 'arising under' federal law." Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004), citing, 28 U.S.C. § 1331, 1441(a). "Under the 'well-pleaded complaint' rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." Pascack, 388 F.3d at 398, citing, Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1, 6 (2003). "To support removal, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Id., quoting, Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10-11 (1983) (internal quotation marks and brackets omitted).

Here, the Employees' Complaint does not assert a claim under the Constitution or federal law. Instead, the Employees assert claims for a breach of contract, fraudulent inducement and misrepresentations. The Complaint does not expressly refer to ERISA or the LMRA. That USS might assert, as a defense to these claims, that they are preempted by ERISA or the LMRA, is an insufficient basis for removal. Id. Accordingly, the Employees' Complaint is not removable under the well-pleaded complaint doctrine.

A corollary to the well-pleaded complaint rule, however, allows for the removal of an action from state court, "if it falls within the narrow class of cases to

which the doctrine of 'complete pre-emption' applies." Id., at 399, citing, Aetna Health Inc. v. Davilla, 124 S. Ct. 2488 (2004).  The doctrine of complete preemption is based upon the recognition that, in certain instances, Congress has so completely preempted a particular area of law that any civil complaint that comes within the scope of this area necessarily arises under federal law, and is thus removable. Id., and Felix v. Lucent Technologies, Inc., 387 F.3d 1146, 1155 (10th Cir. 2004).  The Supreme Court has applied the doctrine of complete preemption both in the context of ERISA and the LMRA. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S. Ct. 1235 (1968) (holding that a state court suit to enjoin a union strike under state law was properly removed because the claim was completely preempted by the LMRA) and Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542 (1987) (holding that the doctrine of complete preemption supports the removal of a case from state court where the claim falls within the scope of § 502 of ERISA).

Here, USS opposes remand on the basis of complete preemption both under ERISA and the LMRA.  I will separately address each contention.

### A. COMPLETE PREEMPTION UNDER ERISA[2]

---

[2] The doctrine of complete preemption under section 502(a) of ERISA, 29 U.S.C. section 1132(a) is different than the doctrine that a claim may be preempted under section 514(a) of ERISA, 29 U.S.C. section 1144(a).  Complete preemption under section 502(a) is a jurisdictional issue; preemption under section 514(a) is used as a defense to a state law claim.  As the Third Circuit Court said in Pascack:
> [u]nder section 514(a), ERISA supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. setion 1144(a).  Unlike the scope of section 502(a), which is jurisdictional and creates a basis for removal to federal court, section 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court. Lazarko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000).  Section 514(a), therefore, does not permit removal of an otherwise well-pleaded complaint asserting only state law claims. ...

Pascack, 388 F.3d at 398 n. 4.  Thus, while a defendant may not be able to remove a claim to federal court under the complete preemption doctrine, that same defendant may successfully argue in

5

In <u>Levine v. United Healthcare Corp</u>., 402 F.3d 156, 162 (3d Cir. 2005), the Third Circuit court reviewed the framework for determining whether a case is completely preempted under section 502(a) of ERISA. The court observed that:

> [i]n order to ensure that Congress's intent of giving section 502(a) "extraordinary preemptive force" was fulfilled, we utilized the two categories of ERISA cases, originally set out by the Supreme Court in <u>Pegram v. Herdich</u>, 530 U.S. 211, 120 S. Ct. 2143, 147 L.Ed.2d 164 (2000). <u>Pryzbowski</u>, 245 F.3d at 271. The first category involves cases where the claim challenges the administration of, or eligibility for, benefits. These cases fall within the scope of 502(a) and are preempted. <u>Id</u>. at 273. The second group of cases challenges the quality of the medical treatment performed and is not preempted. <u>Id</u>., at 273.

<u>Levine</u>, 402 F.3d at 162. Here, USS insists that the Employees' claims fall within the first category of cases. As the party seeking to establish federal jurisdiction, USS bears the burden of demonstrating that the claims at issue challenge the administration of, or eligibility for, benefits. Consequently, USS must convince me that: (1) the Employees could have brought their claims under § 502(a) and (2) no other legal duty supports the Employees' claims. See <u>Pascack</u>, 388 F.2d at 400, <u>citing</u>, <u>Pryzbowski</u>, 245 F.3d at 274.

USS presents persuasive arguments in support of its position. Indeed, I have had difficulty with this issue. Nevertheless, after culling through the briefs and cases on point, I conclude that the doctrine of complete preemption does not apply here. In reaching this conclusion, I find the Tenth Circuit Court's decision in <u>Felix v.</u>

---

state court that ERISA preempts the state law claims. In that instance, federal law will govern the disposition of the claims.

Lucent Technologies, Inc., 387 F.3d 1146 (10th Cir. 2004) to be persuasive.  In Felix, Lucent entered into a Memorandum of Agreement with the union, whereby employees would receive certain enhancements to their pension in exchange for retiring. Written material describing the benefits was handed out to the employees. The plaintiffs then had individual meetings with Lucent representatives during which representatives explained that it was a one-time offer and that any delay in accepting the offer would not result in any additional benefit.  The plaintiffs then timely accepted the offer only to later learn that Lucent subsequently offered additional benefits to those who had not yet retired. The employees then filed suit in state court for fraud and Lucent removed the action to federal court on the basis of complete preemption under both ERISA and the LMRA.  The employees sought remand.

On appeal, the Tenth Circuit court held that the district court had erred in finding complete preemption under § 502(a)(1).  The court stated:

> [t]he terms of the later October package explicitly excluded Plaintiffs, and they do not argue that they have a colorable claim for those benefits. ... Plaintiffs are simply not claiming that, at the time of their suit they were eligible or likely to become eligible for the additional benefits under the terms of any welfare or pension plan. ... The nature of their claim is not that Defendants improperly withheld vested benefits owed to them, but rather that they should receive damages for the fraud they suffered.  As the Eleventh Circuit has held, ERISA provides no cause of action to non-participants who claim they were defrauded out of pension benefits in violation of common law fraud principles. ... Because Plaintiffs are not entitled to the additional benefits at issue "under the terms of [their] plan," their state law claims do not fall within the scope of ERISA § 502(a)(1), and our subject

7

>matter jurisdiction cannot be based upon the doctrine of complete preemption.

Felix, 387 F.3d at 1162 (internal citations omitted).

Like the plaintiffs in Lucent, the Employees here do not contend that they have a colorable claim to the benefits provided to the Group II employees. They are not claiming that they were eligible or likely to become eligible for those benefits. They simply are not claiming that they are entitled to any additional benefits under the plan. The predicate for damages here is not the wrongful denial of benefits but the allegation that the Employees detrimentally relied upon false information provided by USS and USS's breach of individual contracts. As such, the Employees do not have standing to sue under § 502(a) and legal duties independent of ERISA (breach of contract, fraudulent inducement and misrepresentation claims) support their claims.

Because the Employees' claims are not completely preempted by ERISA, ERISA cannot serve as the source of removal jurisdiction.

## B. COMPLETE PREEMPTION UNDER THE LMRA

USS also argues, briefly, that the Employees' claims are completely preempted under the LMRA. USS urges that the claims are not capable of resolution without interpreting the terms of a collective bargaining agreement. USS explains that each cause of action the Employees assert includes, as an element of damages, the loss of vacation, profit-sharing, seniority and continued employment rights, and that such items implicate the negotiated BLA.

Section 301 of the LMRA "governs claims founded directly on rights created

8

by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (citations omitted). Here, as in Caterpillar, the Employees allege that USS has entered into and breached individual contracts with them. As the Caterpillar court observed, "[s]ection 301 says nothing about the content or validity of individual employment contracts. Caterpillar, 482 U.S. at 394. Indeed, individual contracts are not "inevitably subsumed" into a CBA and may, in fact, add to a CBA. Id. at 396.

     USS may be correct that the resolution of the Employees' claims will require consideration of the BLA. Yet "[t]he Supreme Court has outlined a key distinction between a claim that involves interpretation of CBA terms and one that involves mere reference to those terms, with only the former requiring complete preemption under § 301 of the LMRA." Lucent, 387 F.3d at 1164. Indeed, "'the mere need to look to the CBA for damages computation is no reason to hold the state-law claim defeated by § 301.'" id., quoting, Livadas v. Bradshaw, 512 U.S. 107, 125 (1994). Accordingly, I find that the Employees' claims are not completely preempted by § 301 of the LMRA. See Lucent, 387 F.3d at 1165 (holding that complete preemption under § 301 does not apply where the plaintiffs "do not allege that Defendant made any misrepresentations about the terms or application of the MOA or CBA. Rather, they allege that Defendant lied in informing them regarding the *choice* between retiring under the June plan or waiting until later. Therefore, there is simply no need to interpret the MOA or CBA in order to ascertain whether Defendant's

representations were false, and the actual meaning of the CBA and MOA is not in dispute.").

*******************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM H. ARMSTRONG, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-1749 |
| | ) |
| UNITED STATES STEEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **12th** day of April, 2006, for the reasons set forth in the accompanying Opinion, it is Ordered that the Plaintiffs' Motion to Remand (Docket No. 6) is GRANTED. This action shall be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania, forthwith. This case is closed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge